My name is Larry Anderson. I, on behalf of John Morrison, represent the appellants, Fossens, in this matter. I would like to take ten minutes for my remarks and reserve five for rebuttal. And the United States, we have agreed that the United States Department of Labor will take five minutes of our time as well. The issue in this case is whether or not Montana's insurance law prohibiting discrimination in the rating of premiums and the assessment of premiums is preempted under ERISA. More particularly, the issue is stated whether Montana insurance law prohibiting this discrimination is saved by the savings clauses of either ERISA under 514 sub B or the HIPAA statute under 731 of the HIPAA statute. Basically, Montana has a very discrete and specific public policy in its group rating law. That law basically is designed to promote accessibility of health insurance for people. It's group health insurance for people. It's designed to prohibit abusive rating schemes by health insurers. Counsel, can I focus you on one issue? Putting aside for a moment the breach of contract claims and the unfair insurance trade practice claims, which I view as being different, what is it that Montana's law permits you to claim that is not covered by an ERISA claim? Montana's law is specifically unique because of its small employer rating system. I respect that, but I'm just saying that in terms of the types of things that are prohibited, what remedies can be sought and so on, doesn't ERISA occupy that field? Let's say Montana had no such law. Again, putting aside the unfair practices and the state breach of contract situation, why couldn't you just bring a claim under ERISA and seek the same remedies that you sought under the state equivalent? First of all, we might have been able to. But the problem with that, that we spent probably inordinately too much time in our briefing on, is whether the discrimination at issue in this case involves an ERISA plan. But our position is, with respect to the discrete Montana insurance rating law regulation, that's an issue, and it's extensively analyzed in the Montana Insurance Commissioner's amicus brief. Let's assume hypothetically. If I said to you, when I look at your complaint and I look at what can be pled under ERISA as to those major points, and they're six of one, half a dozen of another, if that's correct, then there's preemption here. Is there not of the state law? No. Under 732 of the HIPAA statute, it expressly saves from the remedies provisions of 502 of ERISA. 731 of the HIPAA statute expressly saves from complete preemption provisions under 502 remedies provisions of the HIPAA statute, in both subsections A1 and subsection A2. A1 says, subject to paragraph 2, and except as provided in subsection B of this section, this part shall not be construed to supersede any provision of the state law which establishes, implements, or continues in effect any standard or requirement solely relating to health insurance issuers in connection with group health insurance coverage, except to the extent that such standard or requirement prevents the application of a requirement of this part. So Montana's law does not prevent the application of the discrimination statute in 701 of the HIPAA statute. Well, that's why I accepted out the breach of contract and the unfair insurance trade practices, which I think really do benefit from the exception that you refer to. But the remainder of your complaint seems to me to be a direct overlay of the ERISA statute. Why am I wrong about that? Because of Montana's unique definition in its Small Employer Insurance Availability Act. And that act basically says that a small employer can be a bona fide association. Well, in this particular case, what has occurred is that Blue Cross is basically trying to have it both ways. What they've done here is in the Montana regulatory system, they want to avoid the community rating law using the small employer insurance availability law in definition of bona fide association. And then when they're faced with the application of the Small Employer Availability Act's definition of bona fide association, they want to use community rating law to say that their plans exceed 50 employers. With respect, counsel, it seems to me you've really changed your complaint on appeal here. When you look at the actual allegations of your complaint, it seems to me you're suing to compel the insurance compliance with the plan and to enforce the terms of the plan. And under that circumstance, it seems to come within ERISA. No, we're not seeking to enforce any plans. Our complaint is not against the plan. Our complaint is against the insurance carrier, Blue Cross. We're not suing either of either the But you're claiming that they breached the insurance contract, right? No, we're saying they breached Montana law. We're saying they breached both community rating law under the large employer system and we're saying they breached Montana's Small Employer Insurance Availability Act. Those are what the allegations are in the complaint between paragraphs 12 through 24. There is indeed a breach of contract case, but the contract that issues the contract between Blue Cross and the plaintiffs. Now, remember, the plan here is there's two plans and there's a question. And we don't think that this court needs to delve into that thicket. There's a question of whether or not we're talking about the Fossum Brothers plan or whether we're talking about the MCC or the AMI plan. But you don't have to get there because we haven't sued those plans. The plan that the plaintiffs bought was sold through the Chamber of Commerce and it's the Montana Chamber of Choices plan and the AMI plan. And in both of those cases, Blue Cross asserted that they were not a bona fide association. So then you have to go to Montana law. And once you go to Montana law and apply the Small Employer Insurance Availability Act and its unique definition of small employer, that's where this case goes. What's occurred here. Tell me where this is argued in your brief. It's argued in the reply brief. And it's argued in the reply brief in the brief at the remand level. Our basic position is that there's two savings statutes involved here. The savings statute under the conflict preemption provisions of ERISA under 514. And 514 says that the state's regulation of insurance is safe from preemption. We know there's plenty of jurisprudence on that point. But what is not so clear until this case is whether or not in complete preemption under 502 of ERISA, which is what's being argued here, whether there's the HIPAA statute saves that from preemption. And our position is that under 731, it expressly saves from complete preemption the remedies provisions, the civil enforcement provisions under 502 of ERISA. I want to reserve the rest of our time for Amiki and a reply. That's fine. May it please the Court. My name is Yashena Evans, Counsel for the United States Secretary of Labor, appearing as amicus on behalf of plaintiff's appellants. The question the Court really must answer today is, must plaintiffs bring their claim as an ERISA action in federal court? And Section 731 says the answer to that question must be no. When Congress amended ERISA through the Health Insurance Portability and Accountability Act in 1996, it said in Section 731, Part 7, that is HIPAA, will not supersede any provision of state law which establishes, implements, or continues in effect any standard or requirement solely relating to health insurers, relating, excuse me, in connection with group health coverage, except to the extent that that standard or requirement prevents the application of any requirement of Part 7. So it is clear from Section 731 that Congress intended that HIPAA not preempt state laws that either provide broader requirements than those contained in Part 7, or even similar requirements than those contained in Part 7, because in either case will those standards prevent application of Part 7. But in this particular case, Counsel, it seems to me your point is well taken about the state HIPAA law. It's well taken with respect to the unfair insurance trade practices. And by the way, on those you're only seeking equitable relief and state statutory rights, which are expressly saved in the section you talked about. But it seems to me that the balance of this is just ERISA copied over basically. It doesn't seem to be any different at all. Why am I wrong about that? Because the legislative history of Part 7 makes clear that Congress intended only the narrative... But you don't get to the legislative history if it's clear. If the statute's clear, we don't go there. And if you look at the statute on its face, and you compare the language of the state act, meaning the non-HIPAA and the non-unfair insurance trade, it's kind of six of one, half a dozen another. They're looking for damages in that part. It's exactly what ERISA calls for. I see two different lawsuits here basically, one that's exempt, one that's not exempt. I don't disagree with the Secretary's position as to the latter two, but I'm puzzled about the first part. If you can have suits like this, you're going to have a patchwork all over the country of different state laws that exactly paraphrase, if you will, ERISA claims of the very type that... When ERISA was passed, they were trying to avoid all this geography of all these different laws. They were trying to make it uniform. And I'm puzzled why the Secretary is arguing as to that portion of this lawsuit that it survives. Because Congress said so. Because in 731, Congress says it does not matter if theoretically this claim could be brought as an ERISA action. It said, we're recognizing the historical role that states have played in insurance regulation, and with respect to the HIPAA requirements, it absolutely does not matter, as long as it doesn't prevent the application of Part 7. So it can provide additional remedies. It can provide broader requirements. Congress said with respect to HIPAA, with respect to Part 7, there won't be this fear of this non-uniform administrative scheme. But that's where the state HIPAA survives, as I suggested. I don't argue with you about that. I don't argue with you about it with respect to the unfair insurance trade. No question about that. I'm talking about the rest of the lawsuit. Right. And with respect to the remedies that they are seeking under the similar Montana insurance law, Section 731 says that Part 7 will not supersede any provision, any provision of state law. State law includes remedies. It would be illusory for Congress to say to states, you can operate in this area, but you cannot implement your law with respect to remedies. How do you implement a law? You implement the law with respect to remedies. So Congress has said, in addition to operating in this area and providing broader requirements, you can also provide remedies, because that's what implementation means. I guess I'm lost. We're properly in federal court? No, Your Honor, this case is not. I didn't understand the Secretary's position. I thought you said originally that the Secretary thought they should be brought in federal court. The question for the court is, must they be brought in federal court? And we're saying that no, that this case can be brought in state court as it was without being removed to federal court, because Part 7 says states can implement any law with respect to the HIPAA provisions, and that includes remedies as well. But it shouldn't have been removed? It should not have been removed, no, Your Honor. This case was not completely preempted by ERISA. So the Secretary is asking that it be remanded to the state court. That's correct. Thank you, Your Honor. Good morning, and may it please the Court, I'm Anthony Shelley, here for the Applee Blue Cross Blue Shield of Montana. I'd like to start by just addressing a couple of the points made by the appellant in the amicus. First of all, Section 731, by its word, indicates that what remains in place are standards and requirements of state law. It doesn't say anything about remedies. It doesn't say anything about enforcement mechanisms. This statute, the HIPAA statute, was enacted against the backdrop of years of ERISA law in which the Supreme Court had said the remedies of ERISA are sacrosanct. Those cannot be overridden by the states. And I do agree that there are two savings clauses here, the ERISA savings clause and this savings clause. But both of them simply save substantive rules of decision. They don't save remedies. So in this case, where the plaintiffs are trying to assert essentially a claim under 526 of Montana law, the same HIPAA, the little HIPAA law that exactly duplicates ERISA, their remedy for all their claims, whether they want to call it unfair trade practices, whether they want to call it breach of contract, all of them are seeking to enforce that law. That law is a saved law either under HIPAA or this HIPAA exception or under ERISA's savings clause, and it has to be enforced through ERISA's remedies. But let me interrupt you, counsel. I'm trying to figure out if the little HIPAA law in Montana is identical to the HIPAA law in the federal statutes and, as you said, they're identical, how does that not fit into the savings clause of 731A? Because does it somehow seem to affect the standard or requirements or prevent the application of the requirement of Part 7? If it's exactly the same, it's almost without significance. But let's say it was a little different. Whether it's exactly the same or a little different, I would say that the Montana little HIPAA law is saved. Its substantive requirements are saved, but it's the federal court's obligation through ERISA to apply that as a saved state insurance law as a rule of decision. So if Montana's law, and there's been a lot of argument that somehow, even though it's exactly duplicative, that it's more expansive in substance. If it were, it would be for the federal court to decide whether that law has been violated and the only remedy available would be the remedies available under 502. Do you have a case that you would cite for that proposition? A number of cases. Okay. What's your best case? My best case is the Rush Prudential case. Well, I think I want to say I have three best cases. The Rush Prudential case notes that when you have a saved state insurance law, it remains to be enforced through ERISA. Then there's a case that I shared with my counsel on the other side earlier this week called Orana, from the Fifth Circuit, and the site is 338 F. 3rd 433, where I will note that the DOL also filed an amicus brief in support of this point. 338 F. 3rd 430? Excuse me. 338 F. 3rd 433. 33. It's the Fifth Circuit in-bank case, and here's some language from that case. Orana sued a health plan in Louisiana state court seeking a declaratory judgment. Orana asked the court to find that the health plan could not obtain reimbursement from him for amounts the health plan previously paid for his medical bills. Orana raised two claims, a request for a declaratory judgment requiring the health plan to release its notice of lien and to withdraw subrogation, reimbursement, and assignment claims because of a Louisiana law, because that Louisiana law barred the assertion of these rights. And then it requested statutory penalties and attorney's fees under a Louisiana law. And in holding that that case had to be pursued under ERISA, here's what the Fifth Circuit said. Orana contends that he does not seek relief under ERISA Section 502 because he claims entitlement to relief under Louisiana law, not under the terms of his ERISA plan. That is, according to Orana, Louisiana law nullifies the term of his ERISA plan, which provides for reimbursement, so his claims do not seek relief under the plan's terms. As we see it, however, Orana does seek benefits under the terms of the plan because the plan explicitly provides that the plan is to be enforced according to Louisiana law. Specifically, the plan contains a choice of law clause mandating that the plan be construed in light of Louisiana law so long as Louisiana law is not preempted by ERISA. And then the court says, Our holding comports with a Seventh Circuit case called Plum, but importantly, the third case I would rely on, Unum, which is a Supreme Court case. And that is at 526 U.S. 358, where, and this is a quote from Unum, Ward sued under 502A.1b to recover benefits due under the terms of the plan. The California Notice Prejudice Rule supplied the relevant rule of decision for this Section 502A suit. Unum came out of the Ninth Circuit. In that case, and part of it was affirmed, part of it was reversed, but the Ninth Circuit, in its Unum decision, held that the California Notice Prejudice Rule was a saved insurance law and had to be applied through ERISA because it was saved. So, our position is that these saved insurance laws, whether saved because of 731 or saved because of 514B, the usual savings clause, they can be enforced through ERISA. They won't lead anywhere because they're exactly duplicative of the ERISA provision, which the district judge held was violated. But the case fits into a nice pattern. It falls into the complete preemption framework of remedies provided by ERISA, and then you have the substance of their claim, the 526 of Montana law, was violated being enforced through that remedy, and the district judge finding on the merits there was no discrimination here, whether it's under ERISA's discrimination provision or 526 of the Montana law. With respect just to the preemption issue, why isn't their breach of contract claim under the state HIPAA law and the unfair insurance trade practices claim exempt from ERISA preemption? In fact, Your Honor, I would say that those are even more preempted in a way. Because? Because they're simply remedies. They're simply uses of a vehicle, the breach of contract common law, or the unfair trade practices law to enforce the substantive. Even though they only seek equitable relief? Well, it doesn't matter what kind of relief there is. They're vehicles. They're causes of action, and you cannot raise a cause of action under state law. Now, I would say equitable relief would be available under ERISA. So in that sense, the relief they seek would be available under ERISA if there was a claim on the merits. But the vehicle of the unfair trade practices law or common law breach of contract simply can't be used. In fact, that was the first complete preemption case under ERISA, Metropolitan Life v. Taylor, was a breach of contract claim. And the court said, can't do that. I have to use ERISA's remedies and remove it to federal court. And also the Pilot Life case was a breach of contract type of case, which is another one where the Supreme Court in 1987 said that you cannot use state law remedies even if they're in the insurance code. So it even goes further. It goes further that while the substance of a standard or requirement might be saved, the remedy, even if it's in the insurance code, cannot be saved. Because of the long history now of the Supreme Court cases on the inviolability that the ERISA remedies can't be violated. Would you respond again to the Secretary's position? About Section 731. Yeah. We're in the wrong place. We're not in the wrong place because determining whether you're in the right place requires deciding what remedy is available. What law determines the remedy? Because under the complete preemption doctrine, if there's an exclusively federal cause of action or enforcement mechanism, the case is removable to federal court. So I would say to the Secretary, to DOL, that because ERISA is the only remedy that can be provided when you have an ERISA plan at issue, and Section 731 doesn't override the remedies, that the case was properly removed from state court to federal court under complete preemption. A little bit more, though, about 731. Again, it only addresses the saving of standards and requirements. If you look at the next part of 731, it specifically says that nothing in the section is designed to upset Section 514, which is the preemption provision. So this comes along as part of the long history of preemption under ERISA is the doctrine that the remedies aren't preempted ever. So one more thing about this section is what it really was necessary to do was add some additional savings. Because many of the HIPAA invitations to the states are not insurance regulations. They address privacy. They address the security of information. They address the automation of record keeping. And as a result, those aren't insurance regulations, even if they're in the insurance code. And so Congress had to add this in order to make those specially saved because they wouldn't otherwise be saved under Section 514's normal savings clause. But it said nothing about all of a sudden upsetting all the years of ERISA's remedies and the law of ERISA remedies and complete preemption that had been on the books well before this provision was enacted. So your position is that the only thing that survives in the state area are things that basically ERISA just doesn't cover at all. It's just totally outside its ambit. The only things that survive are state insurance regulations. Even things outside of ERISA's ambit don't survive. So if there's an ERISA remedy that applies, the only thing you can do is sue through ERISA. You can't ever use state law even to get the ERISA remedy unless it's saved. And in this case, they're in a way lucky because it is a saved state insurance law. And they do have an ERISA cause of action to enforce the saved state insurance law, but their luck runs out when they get to the merits because it's exactly the same as the federal provision which the district judge held couldn't be violated. The other point I'd like to address is the case that was pled and then the case that has been argued. The case that was pled is the one I think that your honors have mentioned. It's a claim for discrimination based on Section 526. There are all sorts of vehicles of state law trying to be used to enforce that, but it's an assertion of straightforward discrimination. There have been arguments about misrepresentations here and the summary judgment stage, and there have been arguments about... That's what the agent allegedly indicated in terms of what was going to be provided. Is that what you're talking about? Supposedly, yeah. Supposedly, yeah. That's what's been argued here... That's the allegation. ...and below. The district judge rejected it in the complaint and then also rejected it on the merits saying there couldn't have been a misrepresentation given the particular facts of this case. But in any event, it wouldn't have changed the removal because the removal is based on the complaint that was alleged and the judge determined that the best he could to determine the merits of the case that was alleged and he wouldn't allow a new claim to come in at the 11th hour, particularly when it was factually implausible, essentially. So the argument is that the district court got it all right. It's a complex case in many ways, but the district court in two decisions, including the remand and in the remand rejection order and then on the merits of the summary judgment, he went through it methodically and did a very good job of sorting all the complete preemption arguments out, the defensive preemption arguments, and then the merits of whether there was any discrimination, and we assert that it should be affirmed in total. Any other questions? Thank you. May I please the court? Good morning. My name is John Morrison. I'm co-counsel with Mr. Anderson for the Fossins in this case. I'd like to begin by addressing the question raised by Judge Smith, why couldn't this case have been brought under ERISA? Number one, the case perhaps could have been brought under ERISA, but because of Section 731, Congress has specifically spoken in this area in an area that they haven't necessarily spoken in with respect to the rest of ERISA, and they've said it doesn't matter because there can be parallel causes of action, there can be parallel regulatory schemes. Well, let's assume, just argue, Wendell, let's assume you're correct. So you've got two different schemes. That doesn't change the fact you still could have brought it under ERISA and that it could still be removed on that basis. The reason why it can't be removed under ERISA is because in Section 731, and this is repeated in the DOL regulations and the HHS regulations, and Mr. Shelley referred to this, there is the second paragraph which says, this is not meant to supplant the ERISA Section 514, which is the ordinary preemption section. And so the old Latin maxim, the expression of one is the exclusion of the other, suggests that what is in fact accepted is 502 preemption. In other words, Congress is saying you still have to go through the Savings Clause analysis and the exclusive remedy analysis that we go through in benefits cases with respect to ordinary preemption, but 502 preemption does not occur under Part 7 of ERISA. What's your answer to counsel's point under Unum and the other cases cited that the remedies are, they're not changed. This 731 didn't really talk to the remedies, and those remedies are exclusively through ERISA. They remain that way, and therefore, because ERISA is involved, you've got to, there's a possibility of it being removed to the federal court. What's around with his argument in that area? Thank you, Your Honor. And I think this is a very important point that hasn't been discussed today. All of these cases in which the savings, in every ERISA case I've ever seen in the United States in which the Savings Clause is implicated, the only time the Savings Clause is trumped is when there's a claim for benefits. It's true in every single one of the cases where we trump the Savings Clause. That's what I was talking about before in terms of the equitable concept. Do you agree with that? Is that the saving aspect of it, or do you agree with opposing counsel that equity is available under ERISA as well? I think that the Savings Clause is part of a long trajectory of commitment by Congress to preserve state insurance regulation dating back to the Supreme Court's rulings in 1851. McCarran-Ferguson, the Savings Clause of ERISA, 731 under HIPAA, all respect state insurance regulation. The only time that that has been trumped is in cases about benefits. Rush Prudential was about benefits. Now, here's an important distinction to make. In Rush Prudential v. Moran where the Illinois External Review Law was at stake and in Kentucky Association v. Miller where the Any Willing Provider Law of Kentucky were at stake, they were still claims for benefits. And so there was complete preemption because it was a benefit claim. And then the question was whether a separate state statute that was an insurance regulatory statute was conflict- And in your estimation, the complaint that was filed by the Fossens did not seek benefits. Is that what you're saying? Clearly, this is not a benefits claim. This has nothing to do with the entitlement to benefits under the plan. And that's a very important distinction to make. The reason why the Fossens- Are damages benefits in lieu of benefits, if you will? Well, to the extent that damages are sought here, but if you look at the prayer for relief, it really is expressed in equitable terms with respect to the return of premiums. But to the extent that damages would be sought at all in the case, no, those would not be seeking benefits under the plan, absolutely not. And there's a reason why the Fossens are supported here by the former Montana Insurance Commissioner, by the present Montana Insurance Commissioner, by the National Association of Insurance Commissioners, by the U.S. Department of Labor. And the reason why is that the ability of state insurance departments to regulate rates across the health insurance marketplace and insure against market segmentation and cherry-picking is fundamental insurance regulation. In Standard v. Morrison, this court recognized that the approval of forms, insurance policy forms, was standard insurance regulation. But the insurance regulation of rates is also standard insurance regulation. Rates and forms in every department go hand-in-hand and they should in this court's jurisprudence. Now, I do want to just address another- You're over time. Oh, excuse me, I'm sorry. Further questions? I thought I had- No, you're in the red. Oh, I apologize. But there is no trap door. Okay, thank you. Could I ask a question of the- Sure, sure. Of the government counsel? Has this been litigated, the issue that you are arguing, has it been litigated in any other circuits? To our knowledge, this case has not been litigated in any other circuit, which is why we took an interest in this case. The issue? This particular issue, complete preemption with respect to Part 7 of ERISA, and that was our particular interest in this case. Thank you. Do you want to respond to that? Yes. I think the Eighth Circuit decision in the Worden housing case comes very close to this case. The site for that one- Yeah, I was just curious as to whether the government- Did the government appear in that case? The government wasn't- It wasn't a party and didn't appear to me so far as you know. We can check. Okay, thank you. Is there any further- All right, the matter just argued is submitted for decision. That concludes the Court's calendar for this morning, and the Court stands adjourned. All rise.
judges: Benitez, Schroeder, Smith M.